## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ANISSA R.,

                Claimant,

      v.

LELAND DUDEK,
Acting Commissioner of Social Security,

                Respondent.

No. 22 C 03783

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Anissa R.[1] ("Claimant" or "Plaintiff") appeals the final decision of Respondent Martin O'Malley,[2] Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits. The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 7]. After reviewing the record and the parties' arguments, Plaintiff's Brief seeking remand [ECF No. 13] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 16] is granted.

## BACKGROUND

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using her full first name and the first initial of the last name.

[2] Leland Dudek was appointed as the Acting Commissioner of Social Security on February 16, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he automatically is substituted as the named defendant in this case.

## I.    Procedural History

On August 21, 2019, Claimant filed an application for a period of disability and disability insurance benefits as well as an application for supplemental security income. (R.16). In both applications, Claimant alleged a disability beginning July 18, 2019. (R.16). The applications were denied initially and on reconsideration after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R.16). A video hearing was held on October 14, 2021, at which Claimant was represented by a non-attorney representative. (R.16). A vocational expert also testified during the hearing. (R.16). The ALJ issued a decision on October 22, 2021, finding Claimant not disabled under the Social Security Act denying benefits. (R.16-30). The Social Security Administration Appeals Council denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R.1-4). Claimant filed this lawsuit seeking judicial review of the Commissioner's decision, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## II.    The ALJ's Decision

Under the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must determine whether: (1) the claimant has performed any

substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairments or combination of impairments meet or equal any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in any substantial gainful activity since July 18, 2019, the alleged onset date. (R.18-19). At step two, the ALJ found Claimant had the following severe impairments: obesity, lumbar degenerative disk disease, and osteoarthritis of the knees. (R.19). At step three, the ALJ found that Claimant did not have any impairment or combination of impairments that met or equaled any of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 416.920(d), 416.925, and 416.926. (R.23). With respect to Claimant's mental impairments, the ALJ undertook the paragraph B analysis[3] and determined that Claimant had mild

---

[3] To determine whether a mental impairment meets or equals listing level severity at Step Three of the sequential analysis, a claimant must prove she meets the severity criteria of either paragraph B or C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. To satisfy the

limitations in understanding, remembering or applying information, interacting with others, in concentrating, persisting or maintaining pace, and in adapting and managing herself. (R.21-23). Before step four, the ALJ determined:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally crawl, crouch, kneel, and climb; and frequently stoop.

(R.24). At step four, the ALJ found that Claimant was capable of performing her past relevant work as an Office Nurse. (R.29). Based on these findings, the ALJ denied Claimant's applications for benefits and found her not disabled under the Social Security Act from July 18, 2019 through the date of the decision. (R.30).

## DISCUSSION

### I.   Standard of Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision, therefore, is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153

---

paragraph B criteria, a claimant must demonstrate an "[e]xtreme limitation of one, or marked limitation of two" of four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. *Id.* To evaluate these four areas, ALJs will investigate how an impairment interferes with a claimant's ability to function independently, appropriately, effectively, and on a sustained basis, as well as the quality and level of overall functional performance, any episodic limitations, the amount of supervision or assistance required, and the settings in which a claimant is able to function. 20 C.F.R. § 404. 1520a(c)(2).

(7th Cir. 1997). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is ... 'more than a mere scintilla.' ... It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). More specifically, the Seventh Circuit stated:

> All we required is that ALJs provide an explanation for how the evidence leads to their conclusions that is "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." … At times, we have put this in the shorthand terms of saying an ALJ needs to provide a "logical bridge from the evidence to his conclusion."

*Id.* at 1054 (citations omitted). When conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict.") (internal quotations and citation omitted). The court may not substitute

its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ"' as long as "the decision is adequately supported") (citation omitted).

## II. Analysis

Claimant argues the ALJ's decision cannot stand in this case because: (1) the ALJ's finding that Claimant's mental impairments are non-severe is not supported by substantial evidence; (2) the ALJ's failure to explain why no mental limitations were included in the RFC was legal error; (3) the ALJ"s evaluation of the medical opinion evidence as to her mental impairments is not supported by substantial evidence; (4) the ALJ committed legal error in not considering third-party opinion evidence; and (5) the ALJ's RFC as to Claimant's physical limitations is not supported by substantial evidence. Claimant's Brief [ECF No. 10] at 6-14. The Court will consider each of these arguments in turn.

### A. The ALJ's finding that Claimant's mental impairments are not severe is supported by substantial evidence.

Claimant first asserts that a diagnosis of major depression is essentially a *per se* severe impairment, citing *O'Connor-Spinner v. Colvin*, 832 F. 3d 690, 697 (7th Cir. 2014). Motion [ECF No. 13] at 10. In *O'Connor-Spinner*, the Seventh Circuit found the ALJ's decision not supported by substantial evidence where "the ALJ decided that 'major depression, recurrent *severe*' isn't a severe impairment based on the opinions

of two state-agency psychologists who did not even examine, let alone treat, O'Connor–Spinner." *Id.*, at 697 (emphasis in original). Unlike the plaintiff in *O Connor-Spinner*, here Claimant's diagnosis was "mild" not severe: "[ma]jor depressive disorder, recurrent, mild." (R.469-471 (July 30, 2020 visit with Dr. Jampala at Grand Prairie Services); *see also* R.465-468 (November 27, 2018, February 5, 2019, July 8, 2019 and October 29, 2019 medication progress notes from Grand Prairie Services noting "mild" depression symptoms). Claimant points to the diagnosis of "major depression" by Dr. Cobb at the June 29, 2020 consultative examination, Motion [ ECF No. 13] at 6, but Dr. Cobb's diagnosis, which was made "per supporting documentation," did not specify severity. (R.434). Neither state agency psychological consultant assessed Claimant's depression to be severe. (R.81, R.100).[4] Moreover, the mere existence of a particular diagnoses does not require the ALJ to determine that an impairment is severe. *See Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007) (". . . the existence of these diagnoses and symptoms does not mean the ALJ was required to find that Skinner suffered disabling impairments. Contrary to any claim of severity, the ALJ concluded that at best Skinner had demonstrated nondisabling symptoms, and the record medical evidence established that those symptoms are largely controlled with proper medication and treatment."). For these reasons, the Court does not find the ALJ's conclusion that Claimant's

---

[4] Although Claimant says the state agency consultant on reconsideration found that her anxiety and depression were severe, Motion [ECF No. 13] at 13, the record does not reflect that finding. Rather, the consultant found Claimant had moderate limitations in two of the Paragraph B functional areas and mild limitations in the other two functional areas. (R.100).

depression was not a severe impairment is necessarily inconsistent with Claimant's diagnosis of major depression.

Claimant then argues the record regarding her treatment for anxiety and depression does not support the ALJ's finding that her mental impairments were not severe. Motion [ECF No. 13] at 12. The Court disagrees. The ALJ acknowledged the Claimant's treatment for anxiety and depression but noted it "consisted of medication management only with no counseling." (R.19). The ALJ also identified gaps in Claimant's treatment history, noting after a visit on October 29, 2019, Claimant was next seen again for treatment on July 29, 2020, as well as Claimant's testimony at the hearing in October 2021 that she had not received psychiatric treatment for "some months." (R.19; *see also* R.29 (noting Claimant had no treatment for six months before the hearing)). The ALJ acknowledged Claimant "had some abnormalities" at a psychological consultative examination on June 29, 2020, where the examiner "assigned a diagnosis of major depression per supporting documentation," but also noted Claimant appeared to not have been on her medications at the time and that her complaints during that visit were not repeated in other examinations. (R.19-20).

Further examining Claimant's treatment history after the alleged onset date, the ALJ noted Claimant initiated treatment with a new provider on July 29, 2020, where Claimant was diagnosed with mild major depressive disorder and started on medication (Lexapro and Naltrexone). (R.21). At a follow up appointment on November 5, 2020, Claimant complained of side effects and she was advised to discontinue Lexapro and instead prescribed Zoloft and Naltrexone. (R.21). The ALJ

8

observed Claimant's subsequent follow-up appointments in February and April 2021 reflected improved symptoms and she was advised to continue taking Zoloft, with an increased dosage in April 2021. (R.21). With respect to these examinations, the ALJ generally noted Claimant's treatment records "since 2020 document few abnormal mental status examination findings" instead reflecting Claimant "mostly had mildly anxious mood, but cognition was grossly intact and there were no abnormalities in orientation, attention, concentration, or memory." (R.19; *see also* R.21-22).

The ALJ also evaluated the Paragraph B functional areas of mental functioning, contrasting Claimant's subjective descriptions with contradictory record evidence:

> The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation. The claimant did not report that her impairments affect her memory or her ability to understand or follow instructions (Exhibit B5E/8). She also noted that she could follow written and spoken instructions well. In addition, the claimant indicated that she does not need any special reminders or help to take her medications, to take care of personal needs and grooming, and to go places (Exhibit B5E/5 & 7). During a psychological evaluation conducted on June 29, 2020, the claimant's thought processes were logical, her stream of conversation was relevant, there was no evidence of perceptual disturbances, and she was oriented to person, place, and time (Exhibit B7F/3). Her immediate memory presented as functional, as she was able to repeat four digits in order and correctly remember three digits in reverse. The claimant's recent memory also appeared to be intact, as evidenced by her recall what she ate for dinner the previous night and a recent event in the news. However, her past memory appeared to be limited. While she was able to remember her birthday, address, and phone number, she was only able to identify one past President. The claimant's fund of knowledge also seemed to be impoverished and she struggled with a simple calculation task. Nevertheless, while the claimant was unable to accurately subtract continuous 7s from 100, she was able to multiple (*sic*) single digits and add single digits. Moreover, her abstract thinking abilities appeared to be functional based on her interpretation of

common proverbs and her ability to identify similarities and differences of common items. Other examinations have also shown grossly intact cognition and no abnormalities in memory (Exhibits B1F/8, B9F/6, B11F/8 & 18, B17F/4 & 6, B18F/4, & B21F/4). Such findings substantiate a mild limitation in this area.

The next functional area is interacting with others. In this area, the claimant has mild limitation. The claimant did not report that her impairments affect her ability to get along with others (Exhibit B5E/8). She also indicated that she has no problems getting along with family, friends, neighbors, or others. She noted that she spends time with others and including going to church every two weekly, to the store every two weeks, and to visit family monthly (Exhibit B5E/7). In addition, during a physical therapy session on May 11, 2021, the claimant reported that she was sore from "partying too hard on the weekend" (Exhibit B22F/8). The record has also shown that during examinations and office visits the claimant was calm, polite, pleasant, and cooperative, (Exhibits B1F/6-7, B7F/3-4, B9F/1 & 6, B11F/6-7, 12, & 18, B16F/8-9, B17F/4 & 6, B18F/3, B21F/4, & B22F/46-47). Thus, these objective findings show adequate social functioning and indicate that the claimant is mildly limited in this area.

The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. The claimant reported that her impairments affect her ability to complete tasks but not her ability to concentrate (Exhibit B5E/8). She also indicated that she is unable to finish what she starts, and she could only pay attention for 30 minutes to an hour. However, the claimant acknowledged that she is capable of watching television, reading, and sewing (Exhibit B5F/7). She also reported that she is able to pay bills, count change, handle a savings account, and use a checkbook/money order (Exhibit B5E/6). Furthermore, examinations show no abnormalities in orientation, attention, and concentration (Exhibits B1F/8, B11F/8 & 17-18, B17F/3-4 & 6, B18F/4, & B21F/4). Thus, the record supports a finding that there is a mild limitation in this area.

The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant has reported that she is capable of engaging in some activities of daily living including preparing simple meals, cleaning, shopping for food and household items, paying bills, counting change, handling a savings account, and using a checkbook/money order (Exhibit B5E/5-6). Examinations have also shown that the claimant's insight and judgment are fair (Exhibits 11F/18, 17F/4 & 6, 18F/4, & B21F/5). She also presented to examinations

10

> dressed in neat, clean, seasonally appropriate clothing with average grooming and hygiene (Exhibits B7F/3-4, B9F/2, B11F/18, B17F/4 & 6, B18F/3, & B21F/4). Such evidence suggest that the claimant has a mild limitation in this area.

(R.21-23). As the ALJ's analysis reflects, the assessment of a mild limitation in Claimant's ability in each of the functional areas was the result of the ALJ comparing Claimant's subjective statements against the objective medical record, including overall normal mental examinations, as well as Claimant's ability to engage in daily activities. (R.21-23). In the ALJ's view, that comparison revealed Claimant's statements were inconsistent with and unsupported by the medical record. (R.21-23). For those reasons, the ALJ determined that Claimant had a mild limitation in each of the Paragraph B functional areas. (R.21-23).

Claimant essentially asks the Court to reweigh the evidence considered by the ALJ in analyzing the four mental functioning areas, but the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell*, 97 F.4th at 1052-53. The ALJ did an excellent job here in explaining the basis for her conclusions. Moreover, the Court was able to follow the ALJ's reasoning which satisfies the articulation requirements. *Id.*, 97 F.4th at 1053. Even if reasonable minds could differ as to the ALJ's assessment that Claimant had only mild limitations in the four functional areas, the ALJ's determination that Claimant's mental impairments were not severe was supported with substantial evidence. *See Zoch*, 981 F.3d at 602.

### B. The RFC related to Claimant's mental impairments and the ALJ's analysis of medical opinion evidence as to mental impairments is supported by substantial evidence.

Claimant challenges the RFC in the ALJ's opinion in several respects. As to her mental impairments, Claimant says the ALJ committed legal error in not explaining why no mental limitations were included in the RFC despite the ALJ's finding of mild limitations in four areas of mental functioning. Relatedly, Claimant contends the ALJ's finding that Claimant had only mild limitations in those areas was not supported by substantial evidence because it was premised on an improper evaluation of medical opinion evidence regarding Claimant's mental impairments. Separately, with respect to her physical impairments, Claimant says the ALJ's failure to include any cane usage limitations in the RFC is also not supported by substantial evidence. The Court first addresses the arguments related to Claimant's mental impairments.

The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020). The RFC is a determination of the maximum work-related activities a claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-1001 (7th Cir. 2004). Social Security regulations require that the RFC assessment is "based on all the relevant evidence in the record." *Id.* at 1001, citing 20 C.F.R § 404.1545(a)(1).

The ALJ engaged in an extensive discussion of record evidence and found Claimant had mild limitations in all four functional areas. In understanding, remembering or applying information, the ALJ noted Claimant did not report problems with following instructions, including in handling tasks in her daily life such as taking medication and personal grooming. The ALJ acknowledged that during an examination in June 2020, Claimant's past memory was limited and her fund of knowledge was impoverished, including because Claimant was unable to perform a mathematical task of subtracting continuous 7s from 100, but noted Claimant was able to multiply and add single digits. The ALJ also observed Claimant's abstract thinking was intact during that June 2020 examination, and other examinations showed intact cognition and no abnormalities in memory. For these reasons, the ALJ found Claimant had mild limitations in this functional area. (R.21-22).

In the area of interacting with others, the ALJ similarly concluded Claimant had a mild limitation. The ALJ noted Claimant did not report an impact on her ability to get along with others, observing Claimant goes to church, visits stores every two weeks, and visits family monthly. The ALJ also noted one instance where Claimant reported she was physically sore from having "partied" over the weekend. The ALJ finally noted Claimant was calm, polite, pleasant and cooperative during examinations. (R.22).

In area of concentration and maintaining pace, ALJ acknowledged Claimant's testimony that her ability to complete tasks was impacted, but not her ability to

concentrate, and Claimant's testimony that she was unable to finish what she starts and could only pay attention for 30 minutes to an hour. The ALJ also noted Claimant's testimony that she could watch television, read and sew, and was able to pay bills, count change, handle a savings account and use a checkbook. Finally, the ALJ pointed to examinations showing no abnormalities in concentration. For these reasons, the ALJ concluded the record supports a finding of mild limitation. (R.22).

Finally, in the area of adapting or managing oneself, the ALJ also found the Claimant had a mild limitation, noting Claimant's ability to engage in activities of daily living including preparing simple meals, cleaning, shopping for food and household items, paying bills, counting change, handling a savings account, and using a checkbook/money order. (R.22-23). The ALJ also observed Claimant was appropriately dressed and groomed at examinations. (R.23).

Claimant contends it was error for the ALJ not to explain why, notwithstanding the ALJ's finding that Claimant had mild limitations in the four areas of mental functioning, the ALJ nevertheless did not include any mental limitations in the RFC. Motion [ECF No. 13] at 14-16. In the Court's view, however, reading the ALJ's opinion as a whole and taking a holistic view of it, as the Court must, the Court can discern why the ALJ did not include any mental limitations in the RFC.

At Step Four, the ALJ acknowledged Claimant's testimony about her mental impairments, including that she experiences depression and that some situations overwhelm her, and that about four days a week she does not want to do anything,

14

but she is fine the other days. (R.24). The ALJ noted that Claimant conceded that she had not received psychiatric treatment in several months but continues to take Zoloft. (*Id.*) With respect to Claimant's testimony as to the intensity, persistence, and limiting effects of her symptoms, however, the ALJ found "the claimant's characterization . . . was generally inconsistent with the medical evidence contained in the record" and noted "throughout the period that the claimant alleged disability, she was able to engage in some activities of daily living," which the Court understands to refer back to the ALJ's prior analysis of those activities with respect to the four areas of mental functioning. (R.25). Accordingly, the ALJ found "it difficult to rely heavily on the claimant's subjective complaints" and "[c]onsequently, I relied greatly on the available objective medical evidence of record and the persuasive medical opinion statements." (R.25).

The ALJ then addressed two state agency psychological consultant opinions. The ALJ noted the state agency psychological consultant at the initial level opined that Claimant's mental impairments were non-severe and found mild limitations in the four functional areas; the opinion did not recommend any additional restrictions on Claimant's ability to work based on those non-severe impairments. (R.28); *see also* (R.65-71 (Dr. Nichol's opinion issued on July 9, 2020)). The ALJ also discussed the reconsideration opinion issued approximately ten months later, on May 20, 2021, by Dr. Hudspeth, who similarly opined Claimant had mild limitations in understanding, remembering, or applying information and in adapting or managing oneself, but concluded Claimant had moderate limitations in interacting with others and in

15

concentrating, persisting, or maintaining pace. (R.28; *see also* R.90-101). In assessing Claimant's mental residual functional capacity, Dr. Hudspeth stated Claimant "is in treatment for anxiety and depression. She does well when compliant with treatment, periodically she has some regression and does not follow treatment regime." (R.109-112). Dr. Hudspeth found Claimant had the cognitive and memory abilities, and ability to sustain attention, concentration, persistence and pace, to perform two to three step tasks in the work setting, and that Claimant should be in work settings of "low social contact."

In explaining why the she did not find the reconsideration opinion persuasive, the ALJ noted "it is not supported by the longitudinal evidence, documenting stability with medications and largely the same ones, with no treatment in the last six months." (R.29). Claimant says this finding is "contrary to the record, which shows several medication changes." Motion [ECF No. 13] at 19. The ALJ, however, acknowledged occasions where Claimant failed to take medication as prescribed due to side effects and noted some changes in Claimant's medication over the ten-month period between the initial state agency opinion and the reconsideration opinion. The ALJ noted Claimant started taking Lexapro and Naltrexone in late July 2020 after her initial visit to Grand Prairie Service, but that her medication was switched to Zoloft in November 2020 in response to complaints about side effects. (R.19, R.21). The ALJ also noted Claimant was advised to increase the Zoloft dose and discontinue Naltrexone at an April 2021 follow up visit. (R.21). Claimant does not address the ALJ's finding that Claimant continued to take Zoloft as of the date of the hearing in

16

October 2021. (R.29; *see also* R.24). Thus, the record reflects that as of the date of the hearing, Claimant had consistently taken the same medication, Zoloft, from November 5, 2020 to October 14, 2021, almost a full year. Moreover, Claimant fails to address the evidence showing Claimant's symptoms were effectively controlled with medication. The ALJ discussed the two psychiatric follow up visits following Claimant's switch to Zoloft, on February 11, 2021 and on April 8, 2021, and noted the treating physician reported an improvement in symptoms at both appointments. (R.21). Claimant also does not address the ALJ's finding that Claimant had received no psychiatric treatment in the six months before the hearing. (R.29; *see also* R.24). For these reasons, Claimant argument that her medication was changed at points is not inconsistent with the ALJ's finding that Claimant's symptoms were stable with "largely the same" medications.

The regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ... including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). The most important factors in evaluating any doctor's opinion are supportability and consistency. *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022); 20 C.F.R. § 404.1520c(c)(2). The ALJ considered the record evidence showing Claimant received no psychiatric treatment for five months after the date of Dr. Hudspeth's opinion and that she remained stable on the same medication (Zoloft) for the duration of that period. The Court notes Dr. Hudspeth acknowledged Claimant "does well when compliant with treatment" and because Dr. Hudspeth's reexamination opinion was

17

issued on May 20, 2021, nearly five months before the hearing, it did not account for the additional five-month period preceding the hearing when Claimant remained stable on Zoloft. (R.109-112). Courts "do not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence, and only overturn that weighing if no reasonable mind could accept the ALJ's conclusion." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). Based on this record, the Court will not second guess the ALJ's conclusion that Dr. Hudspeth's opinion finding moderate limitations in two functional areas from Claimant's depression was not supported by the record. (R.29).

"[T]here is no requirement that restrictions from non-severe impairments must be included in the RFC assessment." *Lionel L. v. King*, 2025 WL 446150, at *5 (N.D. Ill. Feb. 10, 2025) (citing *Felts v. Saul*, 797 F. App'x 266, 268-70 (7th Cir. 2019)). Nevertheless, the Court acknowledges that despite the ALJ's conclusion that Claimant experienced only mild limitations in all four areas of functioning, the ALJ was still required to address why she did not include any mental limitations in the RFC. *See*, *e.g.*, *Alonzo S. v. O'Malley*, 2024 WL 4818732, at *2–3 (N.D. Ill. Nov. 18, 2024) (Gilbert, J.) ("The regulations provide that when formulating the RFC finding, the ALJ must account for functional limitations caused by non-severe impairments *when those impairments affect the claimant's work functionality*.") (remanding where "the ALJ did not explain why he concluded, if he indeed did so conclude, that Claimant's mild limitation in concentration, persistence, and pace did not affect his

work functionality such that the ALJ did not need to include any corresponding restrictions in the RFC.").

Here, at Step Four the ALJ addressed, as discussed above, why she found unpersuasive the reconsideration opinion finding moderate limitations by pointing to record evidence showing the Claimant's depression symptoms were stable on the same medication for nearly a year before the date of the hearing. The ALJ also found persuasive the initial state agency opinion finding only mild limitations and including no functional restrictions. The ALJ stated the RFC "is supported by the objective medical evidence and persuasive opinions above" and "[f]urther restriction was unwarranted as . . . examinations were largely normal, her characterization of her symptoms was not consistent with or supported by the medical records, and she was able to engage in several activities of daily living throughout the period that she alleged disability." (R.29).

While the ALJ could have been clearer in explaining why no mental restrictions were included in the RFC despite the finding of mild limitations, the Court can discern the ALJ's rationale from her overall opinion. The Seventh Circuit has explained all that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [the reviewing court] to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Warnell*, 97 F.4th at 1054 (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). In explaining why no additional restrictions were warranted in the RFC, the ALJ concluded as of the hearing date, Claimant's

depression symptoms were stable and controlled by the same medication she had been taking for nearly a year. (R.29). *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("even if Denton had been taking Lexapro for depression, that would not warrant inclusion in her RFC if the prescription controlled her depression, as the evidence suggested.") (citing *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir.2006) as "concluding that depression was not disabling because it was controlled").

In addition, the ALJ clearly cross-referenced her earlier detailed analysis of Claimant's abilities in each of the four functional areas. Although the ALJ's analysis was conducted at an earlier step, the Court must read the ALJ's decision as a whole. *See Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021) (decisions must be read holistically; an ALJ's reasoning and citations in one portion of her decision may support conclusions in another portion of the decision). In finding mild limitations applying the Paragraph B criteria, the ALJ identified evidence of daily activities Claimant remained capable of doing independently, the absence of mental deficits identified by Claimant's providers in treatment notes, and repeated normal mental status exams. *See Bradley W. v. Comm'r of Soc. Sec.*, 2024 WL 5330659, at *3–4 (C.D. Ill. Sept. 25, 2024) (ALJ's "analysis at Steps Two and Four, taken together, are the ALJ's articulation of: 1) how he made the determination he did as to [claimant's] RFC; and 2) why he ultimately omitted mental limitations from his RFC finding. In other words, the ALJ provided the requisite logical bridge from the evidence to his conclusions."). Reading the ALJ's opinion holistically, the ALJ's analysis at both steps comprise the ALJ's articulation of the determination of Claimant's RFC, as well as

why the ALJ omitted mental limitations from the RFC. In other words, the ALJ provided the requisite logical bridge from the evidence to her conclusions. *Warnell*, 97 F.4th at 1054.

Finally, "[i]t is not enough to criticize the ALJ's decision about [her] functional capacity to work. [Claimant] must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *See Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024). Claimant's only argument suggesting any specific mental limitation that she contends should have been encompassed in the RFC relates to her math abilities. Claimant argues the past relevant work the ALJ found Claimant to be capable of performing, as an Office Nurse, requires the ability to perform more advanced math. Motion [ECF No. 13] at 15 n.1. Specifically, Claimant says a consultative examiner in June 2020 (Dr. Cobb) found "she could only multiple (*sic*) and add single digits" and argues "these are not reassuring mental examination result for someone the ALJ believes to be capable of working as a skilled nurse," pointing to DOT descriptions of more complicated math needed to perform the Office Nurse position. *See* [*id.*] at 12, 15.

The ALJ, however, expressly considered this evidence. The ALJ discussed how at the June 29, 2020 examination, Claimant "struggled with a simple calculation task" but concluded "[n]evertheless, while the claimant was unable to accurately subtract continuous 7s from 100, she was able to multiple (*sic*) single digits and add single digits" and "[o]ther examinations have also shown grossly intact cognition." (R.22). In addition, the ALJ observed "it also appears that this evaluation was done

21

at a time when claimant was not on her medications." (R.19). As the Commissioner points out, the record does not reflect that Dr. Cobb asked Claimant to perform any more complicated math tasks at the June 29, 2020 examination and for that reason Claimant's assertion that the record showed she "could only" do simple calculations is not supported by evidence. Response [ECF No. 17] at 6. The ALJ also noted Claimant's ability to engage in other daily activities that, in the Court's view, suggest such math skills, including Claimant's testimony that "she is able to pay bills, count change, handle a savings account, and use a checkbook/money order" as well as go shopping. (R.22).[5]

In sum, this is not a case where the ALJ failed to "explicitly rate the degree of Claimant's functional limitation in each of the four paragraph B categories," *see Kathy A. v. Kijakazi*, 2022 WL 2758001, at *3–5 (N.D. Ill. July 14, 2022), nor did the ALJ's RFC portion of her analysis fail to "include any discussion of the non-severe impairments." *Brandon D. v. O'Malley*, 2024 WL 4449965, at *3–4 (N.D. Ill. Oct. 9, 2024). Indeed, Claimant concedes that "the ALJ dedicates nearly five pages of the eleven substantive pages of the decision to discussing the mental impairments."

---

[5] Claimant also did not file a reply brief responding to the Commissioner's argument that she "does not explain how a single instance of some difficulty with calculations demands permanent work-related restrictions." Response [ECF No. 17] at 6, 11 ("aside from alluding generally to purported difficulty with the mathematics skills supposedly required of her skilled past relevant work, [Claimant] offers no explanation about how her non-severe mental impairment causes any work-related limitations needing restrictions."). *See Calvin S. v. O'Malley*, 2024 WL 1158301, at *5 (N.D. Ill. Mar. 18, 2024) (substantial evidence supported RFC where "Plaintiff does not propose any accommodations or restrictions that might address any limitations he claims stem from" his impairments or "cite any evidence the ALJ did not consider that indicates that he cannot perform as the ALJ found" and noting claimant failed to file a reply brief responding to Commissioner's arguments to that effect).

Motion [ECF No. 13] at 14. In short, Claimant's argument is an invitation to reweigh evidence that was expressly considered by the ALJ rather than a circumstance where the Court is unable to discern the ALJ's reasoning for not including mental restrictions in the RFC. For all these reasons, the Court concludes the ALJ's decisions finding the state agency reconsideration opinion not persuasive and not including mental restrictions in the RFC are supported by substantial evidence.

### C. The RFC related to Claimant's physical impairments is supported by substantial evidence.

Claimant argues the ALJ's RFC is not supported by substantial evidence because the ALJ does not provide a clear explanation as to why the ALJ felt a cane was not necessary. Motion [ECF No. 13] at 23. Claimant says the ALJ noted Claimant use of a cane "at times," pointing to a reference to cane use at one follow up examination after her left knee replacement on April 30, 2021, as well as a report during physical therapy a few weeks later that she was using a cane in her home. [*Id.*] at 22-23. Claimant asserts that because her alleged disability onset date was July 2019 and the ALJ referenced cane usage in April 2021, "the ALJ believes a cane was warranted for greater than 12 months" and "[e]ven if the ALJ believed that Plaintiff improved later to the point she no longer needed a cane, a separate RFC assessment should have been done for the time period when she required a cane because that period lasted longer than 12 months." [*Id.*] at 23.

The applicable regulations and law in this area is clear. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing,

and describing the circumstances for which it is needed i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information." SSR 96-9p, 1996 WL 374185, at *7. "That an individual may use a cane does not necessarily warrant a corresponding RFC restriction. Rather, to justify a cane RFC restriction, the individual must show that a cane is a medical necessity and under which circumstances the cane is medically necessary." *Joseph M. v. Saul*, 2019 WL 6918281, at *12 (N.D. Ill. Dec. 19, 2019) ("Because [claimant] has not done so, the ALJ's decision not to include a cane RFC restriction was not erroneous.").

Claimant's reference to evidence that she used a cane in the weeks following her left knee replacement does not show that Claimant required the use of a cane. As an initial matter, Claimant fails to explain how her use of a cane at one follow-up appointment six weeks after a knee replacement surgery is indicative of cane usage for a period exceeding 12 months including a period before the replacement surgery. Indeed, the ALJ noted a consultative examination report from July 2020 where Claimant was holding the wall and appeared unsteady, but otherwise noted Claimant's "gait was steady, and she did not need any cane during the gait examination." (R.26). The only other reference in the medical record to cane usage is Claimant's report of "using her cane only sometimes at home" at a physical therapy appointment about eight weeks after the replacement surgery. (R.27). In addition, the ALJ noted the state agency consultant on reconsideration addressed the periods from July 18, 2019 to March 17, 2021, and from March 18, 2021 to March 17, 2022,

and concluded Claimant could stand and/or walk for six hours in an eight-hour work day. (R.28). As the Commissioner points out, neither state agency reviewing physician suggested Claimant needed any assistive device to walk or stand and no treatment notes reference Claimant's use of any assistive device before the March 2021 surgery. Response [ECF No. 17] at 14.

Accordingly, the ALJ's decision not to include a cane restriction in the RFC is supported by substantial evidence and Claimant has not met her burden to show that is not the case.

### D. The ALJ's improper rejection of third-party evidence was harmless.

The Commissioner concedes the ALJ improperly dismissed a Function Report submitted by Claimant's mother as "inherently not valuable nor persuasive," but contends this error was harmless because the information in the Function Report was duplicative of Claimant's own Function Report. Response [ECF No. 17] at 15-16. Claimant argues her mother's Report noted Claimant "had difficulties with balance and walking" and "would contradict the RFC finding that [Claimant] can perform light work without any stand and walk limitation." Motion [ECF No. 13] at 20-21.[6]

The Commissioner does not specifically address this reference but generally says the Report "was essentially duplicate (*sic*) of plaintiff's own reports." Response [ECF No. 17] at 15. For this reason, the Commissioner argues the Function Report

---

[6] Claimant does not identify any evidence with respect to her mental impairments in Claimant's mother's Function Report that she claims the ALJ should have considered and does not argue the Function Report supports the inclusion of any mental restrictions in the RFC. Motion [ECF No. 13] at 20-21 (merely noting Claimant's mother "reported her observations of Plaintiff's mental activities").

"did not supply anything not already considered by the ALJ, who assessed [Claimant's] statements in detail and explained throughout her decision how those statements were inconsistent with the medical evidence and other evidence," citing *Books v, Chater*, 91 F.3d 972, 980 (7th Cir. 1996). [*Id.*] at 15-16.

The Court agrees the ALJ's error in dismissing Claimant's mother's Function Report was harmless. Claimant does not identify any unique information in the Report that was not already encompassed by the ALJ's consideration of Claimant's testimony describing her limitations due to knee pain. *See Books*, 91 F.3d at 980 (concluding ALJ did not err in declining to address claimant's brother's testimony specifically because that "testimony did not constitute a separate 'line of evidence'" but rather "served strictly to reiterate, and thereby corroborate, [claimant's] own testimony concerning his activities and limitations. To the extent [the ALJ] found [claimant's] testimony concerning his disabling pain and physical limitations to be untenable when contrasted with his reported daily activities and the relevant medical evidence, [the ALJ] necessarily found [the brother's] supporting testimony similarly not credible."). Moreover, Claimant's mother's Function Report is dated February 6, 2020, before Claimant underwent a left knee replacement on March 18, 2021 (R.314), but the ALJ considered Claimant's reports about limitations from her knee pain both before and after the replacement and found that Claimant's descriptions of the extent of her limitations was not consistent with the medical evidence.[7] Accordingly, the

---

[7] The ALJ considered a consultative examination report from July 20, 2020 where Claimant reported she had been advised to undergo bilateral knee replacement, but noted Claimant said medication helps control pain and allowed her to perform daily living activities. (R.25).

ALJ's failure to consider the mother's Function Report is not a basis for remand.

## CONCLUSION

Accordingly, for all the reasons set forth above, Plaintiff's Brief seeking remand [ECF No. 13] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 16] is granted.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 31, 2025

---

The ALJ noted Claimant continued to complain of left knee pain at a visit on November 30, 2020. (R.26). At an April 30, 2021 follow up following the left knee replacement, the ALJ noted Claimant reported she was doing well, her pain was well controlled with Tylenol, she was ambulating well with the assistance of a walker/cane, her gait showed only a mild limp, and she had only mild complaints of right knee pain. (R.26). She was advised to follow up on the left knee in one year. (R.26-27). At a May 11, 2021 physical therapy appointment, Claimant referenced dancing over the weekend, "reported using her cane only sometimes at home," and demonstrated a very competent gait pattern independently, although she continued to have weakness and fatigue with exercises. (R.27). In addition, the ALJ noted Claimant introduced no records of additional orthopedic visits after April 30, 2021 or physical therapy after May 2021. (R.27). Ultimately, the ALJ found Claimant's testimony about the limiting effects of her occasional knee pain to be inconsistent with her improvement after surgery and with pain medication. (R.25). The ALJ noted Claimant's testimony that she is only able to stand for 20 minutes and walk for 15 minutes, while also considering Claimant's testimony that the left knee replacement and physical therapy helped her knee pain. (R.24; *see also* R.25 (Claimant was thinking of delaying right knee replacement and at Claimant's last visit with orthopedics, on April 30, 2021, she reported just mild complaints as to her right knee). The ALJ also noted that throughout the disability period, including before the knee replacement surgery, Claimant was able to engage in some activities of daily living. (R.25).